Kevin S. Conlogue, SBN 285277
(Kevin@LOKSC.com)
**THE LAW OFFICE OF KEVIN S. CONLOGUE**
292 S. La Cienega Blvd., Ste. 207
Beverly Hills, CA 90211
Tel:   (213) 255-8837
Fax:   (213) 477-2069

Phillip T. Vondra, SBN 159473
(pvondra@vondraandhanna.com)
**LAW OFFICES OF VONDRA & HANNA**
3936 Phelan Road, Suite A2
Phelan, CA 92371
Tel:   (760) 868-4346
Fax:  (760) 868-4056

Attorneys for Plaintiff
SYLVIA ARISPE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVIA ARISPE, an individual and successor-in-interest of CARLOS ALEXANDER, deceased;<br><br>     Plaintiff,<br><br>   v.<br><br>COUNTY OF RIVERSIDE; DEPUTY VICTOR ROMERO, #N6924; DEPUTY RODNEY SCOTT, #N4086; DEPUTY JACOB PADILLA, #5967; SHERIFF CHAD BIANCO; CAPTAIN JAMES KRACHMER; MATTHEW CHANG; MEGAN S. CASTILLO; NAVAIN L. WILLIAMS; RAYMUNDO CLAUDIO; JAQUELINE HERNANDEZ, a nominal defendant, | Case No.:<br><br>**COMPLAINT FOR DAMAGES OF**<br><br>1) **Conditions of Confinement/Medical Care (42 U.S.C. § 1983)**<br>2) **Interference With Parent/Child Relationship (42 U.S.C. § 1983)**<br>3) **State Created Danger (42 U.S.C. § 1983)**<br>4) ***Monell* Claim (42 U.S.C. § 1983)**<br>5) **Supervisory Liability (42 U.S.C. § 1983)**<br>6) **Negligence—Wrongful Death**<br>7) **Violation of Government Code § 845.6**<br>8) **Bane Act Violation (Cal. Civ. Code § 52.1)** |

Defendants.

**9) Violation of the ADA, 42 U.S.C. § 12101, and California Unruh Act (Cal. Civ. Code § 51)**

**DEMAND FOR JURY TRIAL**

**DECLARATION OF SYLVIA ARISPE**

COMES NOW, Plaintiff, SYLVIA ARISPE, an individual and successor-in-interest of CARLOS ALEXANDER, deceased, for her claims against Defendants, COUNTY OF RIVERSIDE, DEPUTY VICTOR ROMERO, #N6924, DEPUTY RODNEY SCOTT, #N4086, DEPUTY JACOB PADILLA, #5967, SHERIFF CHAD BIANCO, CAPTAIN JAMES KRACHMER, MATTHEW CHANG, MEGAN S. CASTILLO, NAVAIN L. WILLIAMS, RAYMUNDO CLAUDIO, and each of them, complains and alleges as follows:

## INTRODUCTION

1.    This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under state law and the United States Constitution in connection with the passing of CARLOS ALEXANDER while he was in custody at Robert Presley Detention Center (RPDC) that took place on or about January 6, 2020.

## PARTIES

2.     At all relevant times, Plaintiff, SYLVIA ARISPE, an individual and successor-in-interest of CARLOS ALEXANDER, deceased, is and was a resident of the City of Hesperia, State of California.  Plaintiff SYLVIA ARISPE is the mother of the deceased, CARLOS ALEXANDER (hereinafter "Decedent").  SYLVIA ARISPE is the successor-in-interest of Decedent as defined under C.C.P. § 377.11, and SYLVIA ARISPE brings this action under C.C.P. § 377.30 and 42 U.S.C. § 1983 to

1   the causes of action that survive Decedent's death, and pursuant to C.C.P. § 377.60
2   and 42 U.S.C. § 1983 for her own wrongful death damages.

3   3.      Decedent does not have any surviving issue.

4   4.      Decedent does have a surviving spouse JAQUELINE HERNANDEZ, aka
5   Jacqueline Alexander, who is sued herein as a nominal defendant.

6   5.      At all relevant times, Defendant COUNTY OF RIVERSIDE ("COUNTY") is
7   and was a duly organized public entity, existing under the laws of the State of
8   California.  At all times herein relevant, the Riverside County Sheriff's Department,
9   Riverside University Health System—Behavioral Health, and RPDC are public
10  agencies which operate under the auspices of Defendant COUNTY.  Additionally, at
11  all times herein relevant, the RPDC was operated, managed, and controlled by the
12  Riverside County Sheriff's Department.

13  6.      At all relevant times, Defendants DEPUTY VICTOR ROMERO, #N6924,
14  DEPUTY RODNEY SCOTT, #N4086, DEPUTY JACOB PADILLA, #5967, were
15  duly authorized employees and agents of Defendant COUNTY, who were acting
16  under color of law within the course and scope of their respective duties as deputies
17  within the Riverside County Sheriff's Department and with the complete authority and
18  ratification of their principal, Defendant COUNTY, which is additionally liable
19  pursuant to sections 815.2(a), 815.4, 815.6 of the California Government Code for the
20  acts of said Defendants DEPUTY VICTOR ROMERO, #N6924, DEPUTY RODNEY
21  SCOTT, #N4086, DEPUTY JACOB PADILLA, #5967.  Defendants DEPUTY
22  VICTOR ROMERO, #N6924, DEPUTY RODNEY SCOTT, #N4086, DEPUTY
23  JACOB PADILLA, #5967, are liable pursuant to section 820(a) for their actions and
24  inactions as alleged herein.

25  7.      At all relevant times, Defendant SHERIFF CHAD BIANCO was the Sheriff
26  for Riverside County and in charge of Riverside County Jails, including RPDC, where
27  Decedent resided at the time of his death.  By California law, the Sheriff is answerable
28  for the safekeeping of inmates in his custody.  Cal. Gov't Code §§26605, 26610; Cal.

Pen. Code § 4006. Defendant SHERIFF CHAD BIANCO was responsible for the management and control of all Riverside County Jails, was responsible for the administration of RPDC; for the selection, promotion, supervision, training, discipline and retention of agents and employees working within the RPDC, including custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff, education staff, and supervisors; and for the implementation of policies and procedures at RPDC. He was responsible for the care, custody and control of all inmates housed in RPDC.  Defendant SHERIFF CHAD BIANCO was regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates in the jails, jail suicides, and other violations involving the housing, care, mental health care, and treatment of inmates at RPDC. Pursuant to California law and his duties as the Sheriff of Riverside County, Defendant SHERIFF CHAD BIANCO is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others. Defendant SHERIFF CHAD BIANCO's affirmative conduct involves his knowing failure to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Decedent. Defendant SHERIFF CHAD BIANCO is additionally liable pursuant to section 820(a) for his actions and inactions as alleged herein.

8.     At all relevant times, Defendant CAPTAIN JAMES KRACHMER was a Correctional Captain for Riverside County and in charge of RPDC, where Decedent resided at the time of his death.  Defendant CAPTAIN JAMES KRACHMER was responsible for the management, control, and administration at RPDC; for the selection, promotion, supervision, training, discipline and retention of agents and employees working within the RPDC, including custodial staff, counselors, advisors,

nurses, doctors, physician assistants, medical staff, mental health staff, education staff, and supervisors; and for the implementation of policies and procedures at RPDC. He was responsible for the care, custody and control of all inmates housed in RPDC. Defendant CAPTAIN JAMES KRACHMER was regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates in the jails, jail suicides, and other violations involving the housing, care, mental health care, and treatment of inmates at RPDC. Pursuant to California law and his duties, Defendant CAPTAIN JAMES KRACHMER is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others. Defendant CAPTAIN JAMES KRACHMER's affirmative conduct involves his knowing failure to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Decedent. Defendant CAPTAIN JAMES KRACHMER is additionally liable pursuant to section 820(a) for his actions and inactions as alleged herein.

9.      At all relevant times, Defendant MATTHEW CHANG, M.D., was the Department Director for Riverside University Health System—Behavioral Health and in charge of jail mental health operations in Riverside County, where Decedent resided at the time of his death. Defendant MATTHEW CHANG was responsible for the management and administration of mental health services of the RPDC; for the selection, promotion, supervision, training, discipline and retention of mental health workers working within the RPDC, including counselors, nurses, doctors, physician assistants, mental health staff and supervisors; and for the implementation of mental health policies and procedures at RPDC. Defendant MATTHEW CHANG was regularly provided with reports concerning the treatment of mentally ill inmates, jail suicides, and other violations involving the mental health care and treatment of

inmates at RPDC. Pursuant to California law and his duties as the Department Director for Riverside University Health System—Behavioral Health, Defendant MATTHEW CHANG is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of her subordinates, or her acquiescence in the constitutional deprivations which this Complaint alleges, or for conduct that showed reckless or callous indifference for others. Defendant MATTHEW CHANG's affirmative conduct involves his knowing failure to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on Decedent. Defendant MATTHEW CHANG is additionally liable pursuant to section 820(a) for his actions and inactions as alleged herein.

10.     At all relevant times, Defendants MEGAN S. CASTILLO, NAVAIN L. WILLIAMS, and RAYMUNDO CLAUDIO were duly authorized employees and agents of Defendant COUNTY, who were acting under color of law within the course and scope of their respective duties as medical staff within the Riverside University Health System—Behavioral Health and with the complete authority and ratification of their principal, Defendant COUNTY, which is additionally liable pursuant to sections 815.2(a), 815.4, 815.6 of the California Government Code for the acts of said Defendants MEGAN S. CASTILLO, NAVAIN L. WILLIAMS, and RAYMUNDO CLAUDIO.  Defendants MEGAN S. CASTILLO, NAVAIN L. WILLIAMS, and RAYMUNDO CLAUDIO are liable pursuant to section 820(a) for their actions and inactions as alleged herein.

11.     At all relevant times, Defendant COUNTY was the employer of Defendants DEPUTY VICTOR ROMERO, #N6924, DEPUTY RODNEY SCOTT, #N4086, DEPUTY JACOB PADILLA, #5967, SHERIFF CHAD BIANCO, CAPTAIN JAMES KRACHMER, MATTHEW CHANG, MEGAN S. CASTILLO, NAVAIN L. WILLIAMS, and RAYMUNDO CLAUDIO, and each of them, and said Defendants subject to oversight and supervision by COUNTY's elected and non elected officials.

12.     In doing the acts and failing and omitting to act as hereinafter described, Defendants DEPUTY VICTOR ROMERO, #N6924, DEPUTY RODNEY SCOTT, #N4086, DEPUTY JACOB PADILLA, #5967, SHERIFF CHAD BIANCO, CAPTAIN JAMES KRACHMER, MATTHEW CHANG, MEGAN S. CASTILLO, NAVAIN L. WILLIAMS, and RAYMUNDO CLAUDIO, and each of them, were acting on the implied and actual permission and consent of Defendant COUNTY.

13.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant herein.

14.     Prior to the commencement of this action, Plaintiff presented a government tort claim with Defendant COUNTY in full and timely compliance with the California Tort Claim Act.  Said claim has been denied expressly or by operation of law by Defendant COUNTY.  Plaintiff has complied with the requirements of the Government Code for the timely filing of formal claims with Defendant COUNTY.

15.     Defendants DEPUTY VICTOR ROMERO, #N6924, DEPUTY RODNEY SCOTT, #N4086, DEPUTY JACOB PADILLA, #5967, SHERIFF CHAD BIANCO, CAPTAIN JAMES KRACHMER, MATTHEW CHANG, MEGAN S. CASTILLO, NAVAIN L. WILLIAMS, and RAYMUNDO CLAUDIO, and each of them, did the acts and omissions hereinafter alleged willfully, intentionally, maliciously, in bad faith and with knowledge that their conduct violated well established and settled law.

## JURISDICTION AND VENUE

16.     This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by the U.S. Constitution, the Fourteenth Amendment, and 42 U.S.C. § 1983.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1367.

17.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in County of Riverside, State of California.

1

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

2

### A. Background

3    18.    Plaintiff re-alleges and incorporates herein by reference each and every

4    allegation and statement contained in the prior paragraphs, as though fully set forth

5    herein.

6    19.    Decedent was born on December 26, 1982.

7    20.    In his 20's, Decedent began to display signs of mental illness and mental

8    disability, and was shortly diagnosed with schizophrenia, bipolar disorder, and

9    depression thereafter.  Decedent then was in and out of several facilities run by the

10   Riverside University Health System—Behavioral Health and other facilities, including

11   but not limited to Arrowhead Regional Medical Center—Behavioral Health, MLK

12   Behavioral Health Center, Kaiser Permanente Mental Health Center, College Medical

13   Center.

14   21.    While treating within the Riverside University Health System—Behavioral

15   Health, Decedent exhibited suicidal ideations and received treatment for said

16   ideations.  Decedent was also placed on several 5150 holds at Arrowhead Regional

17   Medical Center—Behavioral Health due to his mental illness and danger to himself.

18   22.    Decedent's dad had committed suicide, and Decedent had unsuccessfully

19   attempted suicide in 2009, all known by the Riverside University Health System—

20   Behavioral Health and documented in Decedent's Behavioral Health medical records

21   file.

22

### B. Decedent's 2019 Incarceration & Suicide On January 6, 2020

23   23.    On or about October 15, 2019, Decedent was booked into the Riverside

24   County jail system and housed at RPDC.  At all relevant times, Decedent was a

25   pretrial detainee.

26   24.    On or about October 16, 2019, Decedent underwent a mental health screening

27   in which Decedent's 2009 suicide attempt was noted, his father's suicide was noted,

28   his 5150 holds at Arrowhead Hospital were reported, and Decedent reported anxiety

and diagnoses of bipolar and depression.  Decedent was given a moderate acuity level in which Decedent would be provided Behavioral Health services and treatment while incarcerated.

25.     On or about October 21, 2019, Decedent's acuity level was increased to moderately severe, requiring closer Behavioral Health monitoring and treatment, as Decedent was found anxious and angry in his cell, throwing food all over the cell, banging his head in the cell, and holding a cup of feces.

26.     On or about October 30, 2019, Decedent's chart had his current medical conditions changed to include schizophrenia, and Decedent was prescribed Olanzapine to be administered twice a day to treat Decedent's mental disorders, including schizophrenia and bipolar disorder.  On this date, Decedent was suffering from hallucinations, was angry, and was depressed, and in which he reported that he "was surrounded by 20 guys," which was a delusion.

27.     On or about November 8, 2019, Decedent underwent a psychiatric assessment in which Dr. Lyle Forehand found Decedent to be a danger to others due to violence against others, and Decedent reported his depression was coming and going.

28.     On or about November 15, 2019, Decedent was placed in a safety cell where he was placed on close suicide watch as he was found to be a danger to himself and a danger to others due to his mental health status.  Jail employees reported hearing Decedent say that he was "suicidal, cant take it anymore."  During Decedent's safety cell risk assessment, his mood was constantly changing from anger and agitated to being attentive and cooperative.  Decedent's suicidal ideation was also noted in his Behavioral Health file notes.

29.     On or about November 21, 2019, Decedent remained in a safety cell with close suicide watch as he was still a danger to himself due to his mental health status. Decedent was suffering from visual hallucinations, delusional, and paranoid as he believed old scars on his body were being caused by individuals coming into his cell and harming him.

30.     On or about November 22, 2019, Decedent was found in his safety cell putting feces and urinating on a blanket barrier to his door that he created.  During an examination with psychiatrist Jesse Devera on that date, Dr. Devera found Decedent to be very paranoid, unpredictable, agitated, and not compliant with his medications. He was ordered to remain in his safety cell because he continued to be a danger to himself.

31.     On or about November 23, 2019, Decedent was sent to Riverside University Health Systems for an evaluation to see if he could return to a regular cell, and Dr. Santokh Singh found Decedent to still be a danger to himself and to others due to his schizophrenia and psychotic disorder.

32.     On or about November 25, 2019, Decedent returned to RPDC, and Decedent's acuity level was increased to severe.  Per Dr. Singh's findings and orders, Decedent was to continue to receive mental health treatment.

33.     On or about November 28, 2019, Defendant Navain L. Williams discontinued Decedent safety cell and released him from suicide watch even though there was no objective evidence to do so.  In the day prior, other jail behavioral staff found Decedent to still be a danger to himself and others, and to implement suicide precautions for Decedent.  Decedent was exhibiting rambling and pressured speech with an elevated mood and paranoia.  Defendant Navain L. Williams had no basis to discontinue Decedent's safety cell and suicide watch as an objective, reasonable jail clinician in his position would have continued Decedent's safety precautions and continued to summon the proper medical care that Decedent required.

34.     On or about December 4, 2019, Defendant Raymundo Claudio downgraded Decedent's acuity level to moderate when the objective symptoms of Decedent indicated that he was still a danger to himself and others due to his schizophrenia and psychotic disorder.  By being downgraded, Decedent received less Behavioral Health services and treatment that what he needed to treat his mental illness.

35.    On or about December 12, 2019, Defendant Megan S. Castillo discharged Decedent from Behavioral Health services while he was still a danger to himself, suffering from schizophrenia and psychotic disorder, and not compliant with his medications.  Decedent required continued Behavioral Health services and close monitoring at this point.

36.    Pursuant to 15 C.C.R. § 1027.5, safety checks of inmates are to be conducted hourly by correctional staff through direct visual observations of the inmates, and there should be no more than a 60 minute lapse between safety checks.  Based upon Decedent's diagnoses, mental illness, and suicidal ideations, Decedent belonged in housing that had more frequent safety checks than every 60 minutes.

37.    On or about January 6, 2020, Decedent was not housed in a safety cell and not placed on suicide watch, even though his mental illness demanded said requirements. On the same date, on information and belief, Defendants DEPUTY VICTOR ROMERO, #N6924, DEPUTY RODNEY SCOTT, #N4086, DEPUTY JACOB PADILLA, #5967, were responsible to conduct safety checks of Decedent in his cell to continuously check on his well being and prevent Decedent from committing suicide.  At around 7:22 p.m., Defendants DEPUTY RODNEY SCOTT, #N4086, DEPUTY JACOB PADILLA, #5967, were conducting a safety check of Decedent's cell and found Decedent suspended by a bedsheet tied around his neck and tied to the top bunk in his cell.  Upon information and belief, Defendants DEPUTY RODNEY SCOTT, #N4086, DEPUTY JACOB PADILLA, #5967, untied Decedent from the top bunk, laid Decedent on the ground, and did not perform timely CPR or life resuscitating measures on Decedent.  Decedent was pronounced dead at around 7:56 p.m. by the paramedics who arrived on scene.  Decedent's death certificate ruled the immediate cause of death hanging with manner of death suicide.

38.    Based upon information and belief, on or about January 6, 2020, Defendants DEPUTY VICTOR ROMERO, #N6924, DEPUTY RODNEY SCOTT, #N4086, DEPUTY JACOB PADILLA, #5967, failed to conduct timely and proper safety

checks of Decedent's cell that would have prevented Decedent's suicide and caused the damages as alleged herein.

39.     Based upon information and belief, leading up to on or about January 6, 2020, Defendants failed to ensure that Decedent received and took his psychotropic medications to control his schizophrenia, bipolar disorder, depression, and mental illness, which contributed to Decedent's suicide.

40.     Between December 12, 2019 and January 6, 2020, Defendants failed to provide Decedent with behavioral health treatment even though he was in dire need of such treatment due to his mental illness, which also contributed to his suicide.

41.     On information and belief, Defendants failed to take well-established, suicide and self-harm prevention measures, the need for which they were on notice of given behavior indicating a clear decompensation of Decedent's mental health status during his incarceration at RPDC, and/or clear indications of increased risk for self-injury or suicide, including housing Decedent in a cell alone with an upper and lower bunk along with materials that could be used to hang oneself.

**C. The County of Riverside, Sheriff's Department, and Riverside University Health System—Behavioral Health's Policies, Customs, and Practices Violating the Rights of Persons With Mental Illness In Violation Of The Eighth And Fourteenth Amendments Of The United States Constitution By Failing To Provide Adequate Mental Health Services And Adequate Protection to Decedent.**

42.     On or about March 8, 2013, a class action lawsuit was filed against the County of Riverside by inmates in its jails alleging the County fails to provide minimal adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

43.     On or about November 24, 2015, the County of Riverside stipulated to a consent decree to ensure the provision of constitutional health care to its inmates and in which the County agreed that there was probable cause to believe that violations of

the federal rights of inmates had occurred.  As a part of the consent decree, a Remedial Plan was entered into to meet the minimum level of health care necessary to fulfill the County of Riverside's obligations under the Eighth and Fourteenth Amendments, which included the County's agreement to implement the following measures to ensure the provision of constitutional health care:

a) The County shall establish a procedure to ensure that inmates entering the Riverside jails who are taking psychotropic medications are prescribed and offered those medications, or such medications deemed medically necessary by the facility psychiatrist, within 48 hours of booking;

b) The County shall provide an Electronic Health Record System which allows mental health and medical staff to view the medical and mental health information about each patient in a single record to ensure that the medical staff and mental health staff may perform their clinical duties;

c) All health care staff shall provide community standard of care in their respective roles;

d) The County shall annually reassess its medical and mental health care staffing to ensure that it employs sufficient staff necessary to provide adequate medical and mental health care and supervision, including psychiatrists, clinical therapists, registered nurses, licensed vocational nurses, nurse supervisors, health care records clerks and technical support staff;

e) The County shall employ adequate numbers of custody staff to assist with medication administration and the movement of inmates to receive health care services;

f) The County shall develop and implement training to help custody staff identify inmates who self-isolate in order to refer such inmates, along with those who have recently received lengthy sentences, to mental health staff;

g) The County shall ensure inmates who are receiving mental health services and are housed in administrative segregation shall be evaluated daily by mental health staff at the clinical therapist level or higher;

h) Any inmate who reports or demonstrates decompensation or distress shall be seen by the appropriate clinician within 24 hours to determine if alterations to the inmate's placement and living conditions are appropriate;

i) Review in-custody death within 30 days of the death and shall include a written report of the circumstances and events leading to the death, an analysis of any acts or omissions by any staff or inmates which might have contributed to the death, the identification of problems for which corrective action should be undertaken, and psychological autopsies performed by any suspected death by suicide;

j) With mental health treatment, the County shall set forth a system of treatment to include assessments and structured treatment, including face-to-face clinical contacts, group therapy and individualized courses of therapy as clinically indicated;

k) The County shall house inmates with serious mental illness in one of the units designated for such housing, and the units designated for inmates with serious mental illness shall provide programming and structured activities appropriate for the acuity of the mental health needs and capabilities of the inmates as well as standard of care in the community;

l) The County shall develop and implement policies and procedures to ensure clinical input prior to custodial transfers of mentally ill inmates, and the County shall not transfer inmates determined to be mentally ill to or from a mental health housing unit unless mental health clinical staff have been consulted to determine whether the transfer is therapeutically indicated and would not be detrimental to the mental health of the inmate;

m) The County shall provide adequate clinical space and housing facilities in every facility to support mental health clinical operations;

n) The County shall develop and implement policies and procedures to ensure that inmates who are awaiting transfer to RUMC due to their serious risk of self-harm are provided treatment and attention consistent with that determination pending transfer; and,

o) Custody supervisors will regularly inspect the cells and safety cell logs.

44. As of January 6, 2020, Defendant County of Riverside was in violation of the consent decree failed to maintain its constitutionally adequate mental health care, which directly applied to the unconstitutional treatment of Decedent and his untimely death.

45. The actions and inactions of the Riverside County Sheriff's Department, Riverside University Health System—Behavioral Health, and RPDC set forth in the preceding paragraphs were known or should have been known to the policy makers responsible for the Defendant COUNTY and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training was obvious.

46. The actions and omissions of Defendant COUNTY, Riverside County Sheriff's Department, Riverside University Health System—Behavioral Health, and RPDC set forth in the preceding three paragraphs were a motivating and moving force behind the violations of Decedent's constitutional rights as set forth in this complaint.

## FIRST CLAIM FOR RELIEF

### Conditions of Confinement/Medical Care (42 U.S.C. § 1983)

### (Against All Defendants, Except Defendant County)

47. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 46, as well as any subsequent paragraphs contained in the complaint, as though fully set forth herein.

48.     Plaintiff is informed and believes, and based on such information and belief, alleges that Defendants acted with deliberate indifference for Decedent's serious medical needs and safety, in that they failed to provide adequate psychiatric assessment, treatment and intervention; inappropriately assigned Decedent to an unqualified housing instead of a higher observational housing despite clear indications that he required more intensive treatment and supervision; inappropriately assigned him to two-bunk housing with items that could be used as choking hazards despite clear indications that he could not be housed in an area with known suicide hazards; ignored and/or failed to reasonably monitor, to provide security, and to prevent Decedent from committing harm to himself; failed to provide medically-indicated psychiatric care and assessment; failed to ensure the proper administration of psychotropic medications to Decedent; failed to conduct proper safety checks; and ignored Decedent's serious but treatable mental health condition. Due to Defendants' deliberate indifference to the serious nature and life threatening condition of Decedent, and their failure to timely intervene to provide reasonable security, monitoring and safety, and psychiatric medical intervention necessary to prevent his efforts to harm himself, Decedent suffered preventable serious injury and harm by committing suicide by hanging on January 6, 2020.

49.     Decedent was subjected to deprivation of rights by these Defendants, and each of them, acting under color of law and of statutes, ordinances, regulations, customs and usages of the Law of United States, State of California, which rights included, but are not limited to, privileges and immunities secured to Decedent by the Fourteenth Amendment to the United States Constitution and laws of the United States, and particularly: a) his right to access to mental health and medical care and treatment for his serious but treatable condition; b) his right to adequate, reasonable security, monitoring, supervision, classification and housing for his mental health and medical disabilities, each of which was also a cause of his serious injury and harm.

50.    The actions of Defendants deprived Decedent of his right to be free from state actions that shock the conscience under the Fourteenth Amendment's Due Process Clause.

51.    As a result of the conduct of Defendants, and each of them, they are liable for Decedent's harm and death, either because they were integral participants in the violations described herein, or because they failed to intervene to prevent these violations.  Defendants' actions and/or omissions were the direct and proximal cause of Decedent's damages and death.

52.    As a direct and proximate result of the death of Decedent by the above-described conduct of Defendants, the Decedent sustained general damages, including pre-death pain and suffering, and loss of enjoyment of life and other hedonic damages in an amount according to proof at trial.

53.    The conduct of Defendants was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent, and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

54.    Accordingly, Defendants Responding Deputies are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

**<u>SECOND CLAIM FOR RELIEF</u>**

**Interference With Parent/Child Relationship (42 U.S.C. § 1983)**

**(Against All Defendants, Except Defendant County)**

55.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 54, as well as any subsequent paragraphs contained in the complaint, as though fully set forth herein.

56.    This claim arises under 42 U.S.C. § 1983 and the United States Constitution, the laws of the State of California, and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by

said statutes, and by the Fourteenth Amendment of the United States Constitution Due Process Clause.

57.      Parents and children possess a constitutionally protected liberty interest in companionship and society with each other.

58.      Defendants, and each of them, actions and inactions deprived Plaintiff of both procedural due process and substantive due process as guaranteed to the Plaintiff under the Fourteenth Amendment of the United States Constitution when Defendants' actions and inactions proximately caused Decedent's death.  Defendants actions and inactions did not further any legitimate state interest and were oppressive and shock the conscience under the Fourteenth Amendment's Due Process Clause and were done with deliberate indifference to Plaintiff's right to be free from state actions.

59.      The above acts of omissions of Defendants were undertaken while under color of state law and resulted in the violation of Plaintiff's constitutional rights, as stated herein.

60.      The actions of Defendants, and each of them, deprived Plaintiff of her right to be free from state actions that shock the conscience under the Fourteenth Amendment's Due Process Clause.

61.      As a result of the conduct of Defendants, and each of them, they are liable for Decedent's harm and death, either because they were integral participants in the violations described herein, or because they failed to intervene to prevent these violations.  Defendants actions and/or omissions were the direct and proximal cause of Decedent's death and Plaintiff's damages.

62.      As a direct and proximate result of the death of Decedent by the above-described conduct of Defendants, Plaintiff has sustained substantial non-economic damages of pain and suffering and emotional distress resulting from the loss of the love, companionship, comfort, affection, society, attention, services, and moral support damages of this Decedent in an amount according to proof at trial.

63.     The conduct of Defendants was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent and the rights of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

64.     Accordingly, Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

### THIRD CLAIM FOR RELIEF

### State Created Danger (42 U.S.C. § 1983)

### (Against All Defendants, Except Defendant County)

65.     Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 65, as well as any subsequent paragraphs contained in the complaint, as though fully set forth herein.

66.     Defendants' actions placed Decedent in an actual, particularized danger by creating and exposing Decedent to an environment that permitted suicide by hanging which he would not have faced but for Defendants' actions.

67.     By Defendants' acts and omissions, Defendants acted with deliberate indifference to the known and obvious danger of placing Decedent in an environment that permitted suicide by hanging.

68.     As a result of the conduct of Defendants, and each of them, they are liable for Decedent's death and Plaintiff's damages, either because they were integral participants in the due process violation of Decedent, or because they failed to intervene to prevent these violations.

69.     As a direct and proximate result of the death of Decedent by the above-described conduct of Defendants, the Decedent sustained general damages, including pre-death pain and suffering, and loss of enjoyment of life and other hedonic damages in an amount according to proof at trial.

70.     As a direct and proximate result of the death of Decedent by the above-described conduct of Defendants, Plaintiff has sustained substantial non-economic

damages of pain and suffering and emotional distress resulting from the loss of the love, companionship, comfort, affection, society, attention, services, and moral support damages of this Decedent in an amount according to proof at trial.

71.    The conduct of Defendants, and each of them, was willful, wanton, malicious and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendants, and each of them.

72.    Accordingly, Defendants, and each of them, are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF

### *Monell* Claim (42 U.S.C. § 1983)

### (Against Defendant COUNTY)

73.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 72, as well as any subsequent paragraphs contained in the complaint, as though fully set forth herein.

74.    Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendant COUNTY, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Decedent, engaged in the unconstitutional conduct and omissions as is specifically elaborated in ¶¶18-46 above.

75.    Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, Defendant COUNTY with deliberate indifference, and/or conscious or reckless disregard to the safety and constitutional rights of Decedent, and other inmates with severe mental health conditions, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied the policies, practices and customs set forth in Section C, above, including, but not limited to: failure to provide adequate mental health services; failure to mitigate or eliminate known environmental, suicide hazards prevalent throughout jail housing areas, including housing areas to which inmates

with serious mental illness are assigned; failure to provide appropriate custodial supervision of inmates with mental health conditions – despite known suicide hazards; failure to ensure that mental health housing and treatment spaces meet minimum safety design standards for facilities in which persons with serious mental illness are held; failure to ensure sufficient treatment space and staffing necessary to provide adequate mental health care; inadequate intake screening and assessment for housing placement; inadequate monitoring and assessment of inmates' mental health conditions; insufficient mechanisms to ensure communication of relevant information between custodial, medical and mental health staff; failure to ensure appropriate suicide intervention measures; and, failure to ensure adequate training of correctional staff in suicide prevention and responding to mental health care crises.

76.    Plaintiff is informed and believes, and thereon alleges, that, at all times herein mentioned, individual Defendants' wrongful conduct was the result of policies, practices and customs to subject inmates of the Defendant COUNTY's jails to unconstitutionally inadequate treatment for inmates with mental health conditions; permit and promote unsafe conditions for inmates leading to a heightened risk of suicide; and cover-up incidents of unconstitutional behavior by members of its Riverside County Sheriff's Department's custodial staff, Riverside University Health System—Behavioral Health, and RPDC.

77.    At all times herein mentioned, Defendant COUNTY authorized and ratified the wrongful acts of the individual Defendants. The actions and inactions of the County, including it custody staff, Riverside University Health System—Behavioral Health, and RPDC set forth in ¶¶18-46 were known or should have been known to the policy makers responsible for Defendant COUNTY, and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training and supervision was obvious.

78.     The actions of Defendant COUNTY, including it custody staff, Riverside University Health System—Behavioral Health, and RPDC set forth herein were a motivating force behind the violations of Plaintiff's and Decedent's constitutional rights as set forth in this complaint.

79.     As a result of Defendants', and each of their, violations of Plaintiff's and Decedent's constitutional rights as set forth herein, Plaintiff was damaged as alleged herein.

80.     As a direct and proximate result of Defendant COUNTY's policies, practices, and customs, Plaintiff has suffered severe pain and suffering, mental anguish, humiliation, emotional distress, and other non-economic damages.

81.     Accordingly, Defendant COUNTY is liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

## FIFTH CLAIM FOR RELIEF

### Supervisory Liability (42 U.S.C. § 1983)

### (Against Supervisory Defendants, Except Defendant County)

82.     Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 81, as well as any subsequent paragraphs contained in the complaint, as though fully set forth herein.

83.     Plaintiff is informed and believes and thereon alleges that Defendants SHERIFF CHAD BIANCO, CAPTAIN JAMES KRACHMER, and MATTHEW CHANG knew, or in the exercise of reasonable care, should have known of a history and propensity and pattern at the time of this incident for employees of the Riverside County Jail to fail to provide reasonable security, monitoring and supervision of inmates such as Decedent; to fail to comply in implementing policies and procedures or ensuring the enforcement thereof; to fail to train and ensure that deputies, employees and medical care providers provide reasonable security and monitoring of inmates, such as Decedent; and that they provide prompt and competent access and delivery of mental health attention and intervention when inmates, such as Decedent,

were having a mental health crisis requiring prompt intervention. Defendants' disregard of this knowledge or failure to adequately investigate and discover and correct such acts or failures to act was a moving force which caused the violation of Plaintiff's constitutional rights.

84.     Plaintiff is informed and believes and thereon alleges that prior to the incident alleged herein, Defendants SHERIFF CHAD BIANCO, CAPTAIN JAMES KRACHMER, and MATTHEW CHANG acting under the color of their authority as supervisory officers of deputies, counselors, physicians, nurses, staff and all mental health and medical care providers, and in the course and scope of their employment as such, committed similar acts of:

    a)    Failure to provide access to and delivery of mental health and medical care and treatment for inmates at Riverside County Jails with known mental disabilities;

    b)    Failure to provide adequate housing and properly classify inmates in the Riverside County Jails so that they would have access to and delivery of indicated mental health and medical care;

    c)    Failure to provide adequate and reasonable monitoring and housing for inmates that present a risk of suicide to prevent mental health disasters such as attempted suicides and suicides;

    d)    Failure to supervise their subordinates to ensure that staff, deputies and employees were implementing and complying with implementing policies and procedures to ensure the reasonable security and safety of inmates; and,

    e)    Discriminating against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

85.    Plaintiff is further informed and believes and thereon alleges that Defendants SHERIFF CHAD BIANCO, CAPTAIN JAMES KRACHMER, and MATTHEW CHANG knew, or in the exercise of reasonable care should have known, of this pattern or practice of unconstitutional violations, or the existence of facts which create the potential of unconstitutional acts, and these Defendants had a duty to train and instruct their subordinates to prevent similar acts to other inmates, but failed to take steps to properly train, supervise, investigate or instruct deputies, counselors, physicians and nurses, and/or agents or employees, and to retain deputies, counselors, physicians and nurses who had a history of inappropriate conduct, and as a result Decedent was harmed in the manner threatened by the pattern or practice.

86.    At all times herein mentioned, and prior thereto, Defendants had the duty to perform the following, and violated that duty:

    a)    To train, supervise, and instruct deputies, counselors, nurses, physician assistants, physicians, and other agents to ensure that they respected and did not violate federal and state constitutional and statutory rights of inmates;

    b)    To objectively investigate incidents of in-custody injury, deaths, suicides and suicide attempts, inadequate classification and contraindicated housing, and to take remedial action;

    c)    To provide access to and delivery of mental and medical health care, intervention, treatment, follow-up, and attention to injured, ill or potentially suicidal inmates, the lack of which resulted in serious injury or loss of life, and to provide access and delivery of competent mental and medical health care;

    d)    To periodically monitor an inmate's serious mental health and medical condition and suicide prevention, the lack of which may result in serious injury or loss of life;

e)  To periodically monitor the quality and adequacy of mental health and medical care, attention and treatment provided to mentally ill inmates;

f)  To periodically monitor the competency of medical and custodial staffing to ensure that custodial deputies and staff were complying with reasonable security to inmates with mental health disabilities at Riverside County Jails;

g)  To periodically monitor the classification and housing of mentally ill inmates to ensure they have reasonable security and safety and are properly housed, and not housed with or exposed to persons with known dangerous propensities;

h)  To comply with the statutory guidelines and regulations enacted for the protection of inmates held in a custodial setting;

i)  To discipline and to establish procedures to correct past violations, and to prevent future occurrences of violation of constitutional rights of inmates, by not condoning, ratifying, and/or encouraging the violation of Decedent's and other inmate's constitutional rights;

j)  To periodically train custodial staff and counselors on understanding, recognizing, reporting and responding to issues of inmates' mental health care and treatment; and,

k)  Not to discriminate against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

87.    As a legal result of the conduct of Defendants, as described above, Plaintiff was damaged as alleged herein and as set forth above.

88.    Accordingly, Defendants, and each of them, are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

## SIXTH CLAIM FOR RELIEF

### Negligence—Wrongful Death

### (Against All Defendants)

89.     Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 81, as well as any subsequent paragraphs contained in the complaint, as though fully set forth herein.

90.     Defendants had a duty to provide reasonable security and render access and delivery of mental and medical care, treatment and/or emergency services to Decedent for his mental health condition but breached their duty and were negligent in the performance of their duties and this negligence caused the death of Decedent.

91.     Defendants acting within the course and scope of their employment with the Riverside County Sheriff's Department, Riverside University Health System—Behavioral Health, and RPDC had a duty to assure the competence of their employee/agents Defendants but breached their duty and were negligent in the performance of their duties by selecting, hiring, training, reviewing, periodically supervising, failing to supervise, evaluating the competency and retaining their Defendant deputies, counselors, physicians and/or employees and/or agents. This breach of the duty of careful selection, hiring, training, review, supervision, periodic evaluation of the competency, and retention of such officers, counselors and other staff created an unreasonable risk of harm to persons such as Decedent.

92.     The individually named Defendants breached their duty of care to observe, report, monitor and provide reasonable security regarding Decedent's condition and failed to prevent his suicide.

93.     As a direct and legal result of the aforesaid negligence, carelessness and unskillfulness of Defendants, and each of them, and as a result of their breach of duty of care to Decedent, he was injured due to a serious but treatable mental health condition and Plaintiff has sustained substantial non-economic damages of pain and suffering and emotional distress resulting from the loss of the love, companionship,

comfort, affection, society, attention, services, and moral support damages of this Decedent in an amount according to proof at trial.

94.    As a legal result of the aforesaid negligence and unskillfulness of Defendants, Decedent's trauma and injuries and/or suicidal ideation condition did not receive timely, appropriate and indicated intervention and treatment and his condition worsened and resulted in his suicide, and he suffered serious injury and harm as a legal cause of the negligent conduct of Defendants, thereby causing damage as alleged above.

95.    As a direct and proximate result of the foregoing, Plaintiff has damages as recited above and demands and is entitled to, including, but not limited to, general, special and punitive damages (except as to Defendant COUNTY for punitive damages), and any other relief allowable at law or in equity.

### SEVENTH CLAIM FOR RELIEF

**Government Code § 845.6**

**(Against All Defendants)**

96.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 95, as well as any subsequent paragraphs contained in the complaint, as though fully set forth herein.

97.    By virtue of the foregoing, Defendants, including but not limited to representatives of the Riverside County Sheriff's Department, Riverside University Health System—Behavioral Health, and RPDC knew or had reason to know that Decedent needed intensive medical care and that he had serious and obvious mental and medical conditions that put the staff on notice that he should have had his medical and mental condition closely monitored, going forward from October 15, 2019; that he should have been prevented from unsupervised and unrestrained access to a housing unit with bunk beds and choking hazards; that on or before January 6, 2020, he needed immediate medical care and was not given such care. The failure to provide

immediate medical care and mental health care, where his health and mental condition were deteriorating, proximately caused his suicide.

98.    At all relevant times mentioned herein, Defendants failed to take reasonable action to summon medical care for MATTHEW MARTINEZ.

99.    As a legal, direct, and proximate result of the aforementioned conduct of Defendants, Decedent passed away.

100.    As a legal, direct and proximate result of the aforementioned conduct of Defendants, Plaintiff sustained substantial non-economic damages, including but not limited to, the loss of the love, comfort, society, attention, services and support of Decedent, the exact amount of which will be stated according to proof at trial.

101.    Said Defendants knew or were reckless in not knowing that said acts or failure to act, were dangerous, reckless, and done without conscious disregard of the rights and safety of innocent members of the public, including Decedent.  Said misconduct by Defendants in knowingly and/or recklessly creating said substantial risk and high probability of injury or death to members of the public, was oppressive, despicable, highly reprehensible and done with the conscious disregard for the rights and safety of the public, including Decedent. As such, the imposition of punitive damages against Defendants, save Defendant COUNTY, is appropriate.

## EIGHTH CLAIM FOR RELIEF

### Bane Act Violation (Cal. Civ. Code § 52.1)

### (Against All Defendants)

102.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 101, as well as any subsequent paragraphs contained in the complaint, as though fully set forth herein.

103.    The actions of all Defendants, as complained of herein, interfered with, and/or attempted to interfere with, by use of threats, intimidation, and/or coercion, the exercise or enjoyment by Decedent the rights secured to him by the California Constitution and otherwise by California law, in violation of California Civil Code §

52.1.  Specifically, Defendants, and each of them, failed to protect Decedent while in custody and failed to provide safe conditions of confinement of Decedent when said Defendants had a legal obligation to do so.  Defendants violated California Constitution Article 1, Sections 1 and 13 regarding Plaintiff's freedom, independence, liberty, obtaining safety and happiness.

104.    As a direct and proximate result of the actions of Defendants, as complained of herein, Decedent died, and Plaintiff has sustained substantial non-economic damages of pain and suffering and emotional distress resulting from the loss of the love, companionship, comfort, affection, society, attention, services, and moral support damages of this Decedent in an amount according to proof at trial.

105.    As a direct and proximate result of the foregoing, Plaintiff has damages as recited above and demands and is entitled to, including, but not limited to, general, special and punitive damages (except as to Defendant COUNTY for punitive damages), treble compensatory damages, attorney's fees, and any other relief allowable at law or in equity.

## NINTH CLAIM FOR RELIEF

### Violation of the ADA, 42 U.S.C. § 12101,

### and California Unruh Act (Cal. Civ. Code § 51)

### (Against All Defendants)

106.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 105, as well as any subsequent paragraphs contained in the complaint, as though fully set forth herein.

107.    Decedent was a "qualified individual," with a mental impairment that substantially limited his ability to care for himself and control his mental, medical or physical health condition as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. §12131 (2), under Section 504 of the Rehabilitation Act of 1973 (RH), 29 U.S.C. §794 and Cal. Civ. Code §51, et seq., and qualified as an individual with a disability under California law, and he met the essential eligibility requirements

of the County of Riverside's and Riverside County Sheriff's Department's programs to provide mental/medical health care services for its inmate patients.

108.    Defendant COUNTY and its jails and mental health services are a place of public accommodation and a covered entity for purposes of enforcement of the ADA, 42 U.S.C. §12131 (2), under Section 504 of the Rehabilitation Act of 1973, and Cal. Civ. Code §51, seq., explicated by the regulations promulgated under each of these laws.

109.    Defendant COUNTY's mental health services "engaged in the business of . . . health care," custody for persons whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b).

110.    Under the ADA, Riverside County is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

111.    Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problems." 42 U.S.C. § 12101(a)(2).

112.    Defendant COUNTY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. 42 U.S.C. §12182 (a).

113.    Defendant COUNTY receives federal financial assistance for their jails, and therefore must comply with the mandates of the Rehabilitation Act, §504, which specifies that "program or activity" means all of the operations of ... A department, agency, special purpose district, or other instrumentality of a State or of a local government.

114.    Defendant COUNTY and other Defendants violated the ADA and the RA and Cal. Civ. Code §51, et seq., and deprived Decedent and Plaintiff of their federally and state protected rights by: (a) creating and maintaining a number of programs and services to protect the mentally disabled that operate in conjunction with COUNTY's jails; (b) failing to provide services or accommodate Decedent with access to the programs and services of COUNTY'S designated mental health facilities within Riverside County Jails for persons who qualify for access and services under California and federal law; (c) failing to provide services or accommodate Decedent as indicated and with appropriate classification, housing and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled; (d) failing to provide reasonable accommodations to people in custody with mental disabilities at their jails, and providing instead quality of care and service that is different, separate, and worse than the service provided to other individuals with the same disabilities; and, (e) failing to properly train its deputies, medical and mental health staff, employees and officers on how to peacefully respond, treat, and interact with disabled persons, such as Decedent, resulting in discrimination against Decedent, under the ADA and RA.

115.    Decedent was denied the benefits of the services, programs, and activities of COUNTY which deprived him of mental health and medical health programs and services which would have provided the delivery of treatment, follow-up and supervision. This denial of programs and services was the result of his disability in that he was discriminated against because he was mentally ill and "gravely disabled," in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs and to protect himself from self-harm. Defendants' failure to train their employees, and the denial of mental and medical health care, treatment, follow-up, training, supervision was result in the violation of Plaintiff's constitutional rights.

116.     As a legal result of the acts and misconduct of the Defendants and each Defendant complained of herein, Decedent died and Plaintiff has suffered, is now suffering and will continue to suffer damages as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendants COUNTY OF RIVERSIDE, DEPUTY VICTOR ROMERO, #N6924, DEPUTY RODNEY SCOTT, #N4086, DEPUTY JACOB PADILLA, #5967, SHERIFF CHAD BIANCO, CAPTAIN JAMES KRACHMER, MATTHEW CHANG, MEGAN S. CASTILLO, NAVAIN L. WILLIAMS, and RAYMUNDO CLAUDIO, as follows:

1.  For general, special, hedonic, and compensatory damages in the amount to be proven at trial;
2.  For punitive damages in an amount to be proven at trial (save against COUNTY);
3.  For interest;
4.  For costs;
5.  For reasonable costs of this suit and attorneys' fees pursuant to 42 U.S.C. § 1988;
6.  For attorneys' fees pursuant to Civil Code §§ 52, 52.1;
7.  Any civil penalties, including treble damages and a minimum of $4,000.00; and,
8.  For such further other relief as the Court may deem just, proper, and appropriate.

Date: March 8, 2021                 **THE LAW OFFICE OF KEVIN S. CONLOGUE**
                                    **LAW OFFICES OF VONDRA & HANNA**

                                    By:   /S/Kevin S. Conlogue_____
                                         Kevin S. Conlogue, Esq.
                                         Phillip T. Vondra, Esq.
                                         Attorneys for Plaintiff, SYLVIA ARISPE

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2        Plaintiff hereby demands a trial by jury.

3

4    Date: March 8, 2021              **THE LAW OFFICE OF KEVIN S. CONLOGUE**

                                      **LAW OFFICES OF VONDRA & HANNA**
5

6                                     By:    /S/Kevin S. Conlogue

7                                        Kevin S. Conlogue, Esq.

8                                        Phillip T. Vondra, Esq.

                                         Attorneys for Plaintiff, SYLVIA ARISPE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>DECLARATION OF SYLVIA ARISPE</u>**

I, Sylvia Arispe, declare that if called as a witness, I could and would testify competently to the following, of my own personal knowledge:

1. Carlos Allen Alexander ("Decedent") is deceased.

2. Decedent passed away on or about January 6, 2020, in County of Riverside, State of California.

3. No proceeding is now pending in California for administration of the Decedent's estate.

4. I am the Decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeed to the Decedent's interest in the action or proceeding.

5. No other person has a superior right to commence an action or proceeding or to be substituted for the Decedent in a pending action or proceeding as I am Decedent's mother, other than his wife Jaqueline Hernandez aka Jaqueline Alexander.

6. Attached hereto as Exhibit 1 is a true and correct copy of Decedent's death certificate and is incorporated herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 4, 2021, at Hesperia, California.

NAME: Sylvia Arispe

EXHIBIT 1

CERTIFICATION OF VITAL RECORD

# COUNTY OF RIVERSIDE

RIVERSIDE, CALIFORNIA

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11 (REV 7/05)

STATE FILE NUMBER: 3052020014744

LOCAL REGISTRATION NUMBER: 3202033000941

| 1. NAME OF DECEDENT–FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| CARLOS | ALLEN | ALEXANDER |

AKA, ALSO KNOWN AS – Include ',' AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR Months / Days | IF UNDER 24 HOURS Hours / Minutes | 6. SEX |
|---|---|---|---|---|
| 12/26/1982 | 37 | | | M |

| 8. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS/SROP at time of death | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hours) |
|---|---|---|---|---|---|
| CA | | YES [X] NO UNK | MARRIED | 01/06/2020 | 1956 |

| 13. EDUCATION – Highest Level/Degree | 14/15. WAS DECEDENT HISPANIC/LATINO/a/SPANISH? If yes, use worksheet on back | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) |
|---|---|---|
| HS GRADUATE | [X] YES MEXICAN AMERICAN | NO CAUCASIAN |

| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| LABORER | CONSTRUCTION | 2 |

20. DECEDENT'S RESIDENCE (Street and number, or location)
9001 6TH AVE

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| HESPERIA | SAN BERNARDINO | 92345 | 37 | CA |

26. INFORMANT'S NAME, RELATIONSHIP
SYLVIA ARISPE, MOTHER

27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state and zip)
9001 6TH AVE, HESPERIA, CA 92345

| 28. NAME OF SURVIVING SPOUSE/SROP–FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) |
|---|---|---|
| JACKLYN | | HERNANDEZ |

| 31. NAME OF FATHER/PARENT–FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| CHARLES | | ALEXANDER | CA |

| 35. NAME OF MOTHER/PARENT–FIRST | 36. MIDDLE | 37. LAST (BIRTH NAME) | 38. BIRTH STATE |
|---|---|---|---|
| SYLVIA | | ARISPE | CA |

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 01/30/2020 | RES, SYLVIA ARISPE, 9001 6TH AVE, HESPERIA, CA 92345 |

| 41. TYPE OF DISPOSITION(S) | | 45. LICENSE NUMBER |
|---|---|---|
| CR/RES | | EMB7684 |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 47. DATE mm/dd/ccyy |
|---|---|---|
| SOUTHERN CALIFORNIA FUNERAL SERVICE | FD2087 | 01/27/2020 |

| 101. PLACE OF DEATH | | |
|---|---|---|
| ROBERT PRESLEY DETENTION CENTER | | [X] Other |

| 104. COUNTY | 105. CITY |
|---|---|
| RIVERSIDE | RIVERSIDE |

4000 ORANGE STREET

| 107. CAUSE OF DEATH | | | Time to onset between Onset and Death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|---|
| IMMEDIATE CAUSE (A) PENDING | | | | [X] YES NO |
| Final disease or condition resulting in death | | | | 109. BIOPSY PERFORMED? |
| Sequentially, list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | (B) | | | YES [X] NO |
| | (C) | | | 110. AUTOPSY PERFORMED? [X] YES NO |
| | (D) | | | 111. USED IN DETERMINING CAUSE? [X] YES NO |

112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107

113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.)

| 113A. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|
| YES NO UNK |

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|
| Decedent Attended Since | Decedent Last Seen Alive | | |

116. TYPE AT ENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE

| 118. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|---|
| MANNER OF DEATH: Natural Accident Homicide Suicide [X] Pending Investigation / Could not be determined | | YES NO UNK | | |

123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.)

124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury)

125. LOCATION OF INJURY (Street and number, or location, and city, and zip)

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| | 01/23/2020 | NADINE TOWNSEND, DEP.CORONER |

| STATE REGISTRAR | A | B | C | D | E | "010001004423691" | FAX AUTH.# | CENSUS TRACT |
|---|---|---|---|---|---|---|---|---|

---

**CERTIFIED COPY OF VITAL RECORD**
STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

This is a true and exact reproduction of the document officially registered and placed on file in the office of the County of Riverside, Assessor-County Clerk-Recorder.

034984331

DATE ISSUED    DEC 29 2020

PETER ALDANA
ASSESSOR-COUNTY CLERK-RECORDER
RIVERSIDE COUNTY, CALIFORNIA

This copy is not valid unless prepared on an engraved border displaying the date, seal and signature of the Assessor-County Clerk-Recorder.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

CARIVERSD2





CERTIFICATION OF VITAL RECORD

# COUNTY OF RIVERSIDE

RIVERSIDE, CALIFORNIA

## PHYSICIAN/CORONER'S AMENDMENT
NO ERASURES, WHITEOUTS, PHOTOCOPIES, OR ALTERATIONS

3052020014744
STATE FILE NUMBER

1.1

3202033000941
LOCAL REGISTRATION NUMBER

☐ BIRTH ☒ DEATH ☐ FETAL DEATH

TYPE OR PRINT CLEARLY IN BLACK INK ONLY – THIS AMENDMENT BECOMES AN ACTUAL PART OF THE OFFICIAL RECORD

### PART I INFORMATION TO LOCATE RECORD

| | 1A. NAME—FIRST | 1B. MIDDLE | 1C. LAST | 2. SEX |
|---|---|---|---|---|
| INFORMATION AS IT APPEARS ON ORIGINAL RECORD | CARLOS | ALLEN | ALEXANDER | M |

| | 3. DATE OF EVENT—MM/DD/CCYY | 4. CITY OF EVENT | 5. COUNTY OF EVENT | |
|---|---|---|---|---|
| | 01/06/2020 | RIVERSIDE | RIVERSIDE | |

### PART II STATEMENT OF CORRECTIONS

| 6. CERTIFICATE ITEM NUMBER | 7. INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 8. INFORMATION AS IT SHOULD APPEAR |
|---|---|---|
| | | 2 OF 2 |
| 107A | PENDING | HANGING |
| 107AT | - | MINS |
| 112 | | NONE |
| 113 | | NO |
| 119 | PENDING INVESTIGATION | SUICIDE |
| 120 | | NO |
| 121 | | 01/06/2020 |
| 122 | | UNK |
| 123 | | CORRECTIONAL FACILITY |
| 124 | | HANGED SELF WHILE IN CUSTODY AT A CORRECTIONAL FACILITY |
| 125 | | 4000 ORANGE ST, RIVERSIDE, CA 92501 |

LIST ONE ITEM PER LINE

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

| DECLARATION OF CERTIFYING PHYSICIAN OR CORONER | 9. SIGNATURE OF CERTIFYING PHYSICIAN OR CORONER | 10. DATE SIGNED—MM/DD/CCYY | 11. TYPED OR PRINTED NAME AND TITLE/DEGREE OF CERTIFIER |
|---|---|---|---|
| | | 09/30/2020 | CORONER |

| | 12. ADDRESS—STREET and NUMBER | 13. CITY | 14. STATE | 15. ZIP CODE |
|---|---|---|---|---|
| | 800 SOUTH REDLANDS AVE | PERRIS | CA | 92570 |

| STATE/LOCAL REGISTRAR USE ONLY | 16. OFFICE OF VITAL RECORDS OR LOCAL REGISTRAR | 17. DATE ACCEPTED FOR REGISTRATION—MM/DD/CCYY |
|---|---|---|
| | | 10/01/2020 |

CARIVERS02

**CERTIFIED COPY OF VITAL RECORD**
STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

This is a true and exact reproduction of the document officially registered and placed on file in the office of the County of Riverside, Assessor-County Clerk-Recorder.

DATE ISSUED DEC 2 9 2020

This copy is not valid unless prepared on an engraved border displaying the date, seal and signature of the Assessor-County Clerk-Recorder.



034984332



PETER ALDANA
ASSESSOR-COUNTY CLERK-RECORDER
RIVERSIDE COUNTY, CALIFORNIA

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE